IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

RHONDA A. JONES-BELL,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0030

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    A.   Jones-Bell's Education and Employment Background . . . . . . . . . . . 6
    B.   Vocational Expert's Testimony from the Supplemental
        Administrative Hearing Held on September 5, 2013 . . . . . . . . . . . . 6
    C.   Jones-Bell's Medical History . . . . . . . . . . . . . . . . . . . . . . . 7

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 12
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . 13
        1.   Dr. Keating's Opinions . . . . . . . . . . . . . . . . . . . . . 14
        2.   Consideration of Obesity . . . . . . . . . . . . . . . . . . . . 17

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Rhonda A. Jones-Bell on March 6, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Jones-Bell asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Jones-Bell requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On May 29, 2008, Jones-Bell applied for both disability insurance benefits and SSI benefits. In her applications, Jones-Bell alleged an inability to work since March 8, 2008 due to asthma, sleep apnea, diabetes, depression, high blood pressure, anemia, acid reflux, allergies, and anxiety. Jones-Bell's applications were denied on August 15, 2008. On December 18, 2008, her applications were denied on reconsideration. On February 3, 2009, Jones-Bell requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 9, 2010, Jones-Bell appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. In a decision dated November 19, 2010, the ALJ denied Jones-Bell's claims. The ALJ determined that Jones-Bell was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Jones-Bell appealed the ALJ's decision. On January 27, 2012, the Appeals Council denied Jones-Bell's request for review. Consequently, the ALJ's November 19, 2010 decision was adopted as the Commissioner's final decision.

---

[1] On March 31, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

On March 29, 2012, Jones-Bell filed a Complaint seeking judicial review of the Commissioner's decision to deny her applications for disability insurance benefits and SSI benefits.[2] On February 12, 2013, the undersigned reversed and remanded Jones-Bell's case to the Commissioner for further consideration of the opinions of Dr. Keating, a treating physician, and reconsideration of Jones-Bell's RFC in light of her obesity being a severe impairment.[3] On September 5, 2013, a supplemental administrative hearing was held before ALJ Sandbothe. In a decision dated November 27, 2013, the ALJ, on remand, denied Jones-Bell's claims. The ALJ determined that Jones-Bell was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past work as a cashier.[4] Jones-Bell did not appeal the ALJ's remand decision, and the Appeals Council did not review the ALJ's decision on its own. Consequently, the ALJ's November 27, 2013 decision became the Commissioner's final decision.[5]

---

[2] See docket number 3 in case number 1:12-cv-0033-JSS (N.D. Iowa).

[3] See docket number 11 in case number 1:12-cv-0033-JSS (N.D. Iowa).

[4] It is noteworthy that in his first decision from November 2010, the ALJ determined that Jones-Bell could not perform any of her past relevant work. However, in his November 2013 decision, the ALJ determined that Jones-Bell could perform her past work as a cashier. The ALJ's determination that Jones-Bell is capable of performing her past work as a cashier is based on vocational expert testimony. See Administrative Record at 944. Jones-Bell takes no issue with the ALJ's differing conclusions on her ability to perform her past relevant work. Similarly, Jones-Bell also takes no issue with the vocational expert's testimony. Accordingly, the Court makes no determinations based on the differing conclusions in the ALJ's decisions, but simply notes that a difference exists between the two decisions.

[5] See Administrative Record at 894 (Providing in the notice of the ALJ's decision to Jones-Bell that "[i]f you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice.").

3

On March 6, 2014, Jones-Bell filed the instant action for judicial review of the ALJ's November 27, 2013 remand decision.

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision

"extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Jones-Bell's Education and Employment Background

Jones-Bell was born in 1973. She is a high school graduate. She also spent three years in college, but did not obtain any type of degree. In the past, Jones-Bell worked as a cashier, cleaner, and home health aide.

### B. Vocational Expert's Testimony from the Supplemental Administrative Hearing Held on September 5, 2013

At the supplemental administrative hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual with the following limitations:

> She could lift 20 pounds occasionally, 10 pounds frequently. She could only occasionally balance, stoop, crouch, kneel, crawl, or climb. She could not tolerate any extremes of heat, cold, humidity, dust, or fumes. . . . I would indicate she would be limited to simple, routine repetitive work, occasional superficial contact with the public, [and] regular pace.

(Administrative Record at 943-944.) The vocational expert testified that under such limitations, Jones-Bell could perform her prior work as a cashier. The ALJ provided the vocational expert with a second hypothetical that was identical to the first hypothetical, but added that the individual would need "two or more unscheduled breaks, [and] a slow pace for up to one-third of the day."[6] The vocational expert testified that under such limitations, Jones-Bell could not perform her past work as a cashier, and would be precluded from all competitive employment.

Jones-Bell's attorney also questioned the vocational expert:

> Q: If the hypothetical person could not work full eight-hour days. If they were limited to less than eight hours, six hours maximum per day, would they be competitively employable?

---

[6] Administrative Record at 944.

6

A: Well, an individual that could work six hours could do part-time work. But they would be precluded from full-time work under that hypothetical.
Q: Okay. If they were going to miss more than four days of work a month, would they be competitively employable?
A: No. In my opinion, missing four days of work a month precludes competitive employment.
Q: If they could not maintain attention for two-hour segments, would they be competitively employable?
A: No . . . that precludes competitive employment.

(Administrative Record at 944-945.)

### C. *Jones-Bell's Medical History*

On August 25, 2007, Jones-Bell presented at the Mercy Medical Center Emergency Department, complaining of wheezing and an asthma attack. Following an Albuterol nebulizer treatment, Jones-Bell was discharged in stable condition. On September 13, 2007, Jones-Bell met with her treating physician, Dr. Colleen Keating, M.D., regarding a recent asthma flare. Prior to meeting with Dr. Keating, Jones-Bell presented at the emergency department with another asthma attack. She was prescribed Prednisone as treatment, but did not take it. Dr. Keating opined that "[h]er asthma is such that it could kill her if she does not follow her appropriate instructions or if she does not relay to me when she is getting [short of breath] or her peak flows are going down."[7] Dr. Keating treated Jones-Bell with a Prednisone "burst and taper." Dr. Keating further opined that:

> we are going to need to be more aggressive with management of her asthma. I think her overall health will improve as well if we can get her asthma well controlled. Don't know if it is triggered a bit by her acute worsening of depression and anxiety with school work, assignments, some stress there and in regards to that I will giver her some Xanax.

(Administrative Record at 731.)

---

[7] Administrative Record at 731.

7

In a letter dated June 17, 2008, Dr. Keating provided Disability Determination Services ("DDS") with information regarding Jones-Bell's physical condition. Dr. Keating outlined Jones-Bell's diagnoses, including severe asthma, peripheral edema, obstructive sleep apnea, depression, morbid obesity, and hypertension. Dr. Keating opined that:

> With her medical conditions, I don't know that she could carry more than 20 lbs at any given time. She could sit for prolonged amounts of time but standing or walking I think would be limited to no more than five minutes an hour. As far as climbing, kneeling or crawling, I think that is not something that she is able to
>
> For a work environment, she should not be exposed to dust, fumes, extreme temperatures. I think she can remember and understand instructions and interact appropriately with supervisors and use good judgment.
>
> The majority of her limitations are primarily physical with the asthma being so severe and her obesity being so severe at this time I think she would be unable to perform much more than a completely non physical job but probably not anything that would require an 8 hour work day.

(Administrative Record at 585.)

On July 15, 2008, at the request of DDS, Jones-Bell met with Dr. Roger E. Mraz, Ph.D., for a psychological evaluation. Upon examination, Dr. Mraz found that Jones-Bell had a "marked" impairment in the area of working memory. Dr. Mraz opined that such an impairment "indicates that [Jones-Bell] has difficulty focusing her attention, concentrating, and remembering information long enough to use it for another purpose, such as doing mental computations in arithmetic."[8] On the Beck Depression Inventory-II test, Jones-Bell showed "significant" symptoms of depression. Dr. Mraz diagnosed Jones-Bell with adjustment disorder with depression. Dr. Mraz concluded that:

---

[8] Administrative Record at 629.

8

> [Jones-Bell's] work history suggests that she should have no difficulty getting along with supervisors, coworkers, and the public. [Jones-Bell] is an obese woman with multiple physical problems, which impact negatively on her ability to manage her self care needs and the household chores. . . . [S]he had no difficulty remembering and carrying out simple instructions at a reasonable pace.
>
> [Jones-Bell] and her family experienced significant losses in Hurricane Katrina, prompting their move to Cedar Rapids. [Jones-Bell] has experienced significant symptoms of depression as a result of that experience.
>
> [Jones-Bell's] physical problems certainly impact negatively on her employability[.] . . .

(Administrative Record at 629.)

On July 22, 2008, Dr. Carole Kazmierski, Ph.D., reviewed Jones-Bell's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Jones-Bell. On the Psychiatric Review Technique assessment, Dr. Kazmierski diagnosed Jones-Bell with adjustment disorder with depressed mood. Dr. Kazmierski determined that Jones-Bell had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kazmierski determined that Jones-Bell was moderately limited in her ability to: carry out detailed instructions and maintain attention and concentration for extended periods. Dr. Kazmierski concluded that:

> The mental impairment in this case is an adjustment disorder with depression. . . . [Medical evidence] indicates that [Jones-Bell] has had treatment for depression since spring 2007. She is noted to be stable on medication. Recent psychological evaluation suggests that [she] would have some difficulty mastering highly complex material. She can understand and remember instructions, many at the detailed level. Concentration is likely to be somewhat variable depending on

[her] mood and level of fatigue. No restrictions in social functioning are noted.

(Administrative Record at 647.)

On August 11, 2008, Dr. Melodee Woodard, M.D., reviewed Jones-Bell's medical records and provided DDS with a physical RFC assessment for Jones-Bell. Dr. Woodard determined that Jones-Bell could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Woodard also determined that Jones-Bell could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Woodard found that Jones-Bell should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. Dr. Woodard found no manipulative, visual, or communicative limitations. Dr. Woodard concluded that "[t]he objective [and] functional evidence provided by the longitudinal record supports capacity to work [within] limitations outlined above."[9]

On October 9, 2008, at the request of Jones-Bell's attorney, Dr. Keating filled out a "Pulmonary Residual Functional Capacity Questionnaire." Dr. Keating diagnosed Jones-Bell with asthma, edema, allergic rhinitis, GERD, obstructive sleep apnea, depression, obesity, and hypertension. Dr. Keating identified the following symptoms for Jones-Bell: shortness of breath, chest tightness, wheezing, episodic acute asthma, fatigue, and coughing. Dr. Keating indicated that precipitating factors for acute asthma attacks, include upper respiratory infection, allergens, exercise, and stress. Dr. Keating opined that Jones-Bell's experiences of pain would "frequently" interfere with her attention and concentration for performing even simple work tasks. Dr. Keating believed that Jones-Bell

---

[9] Administrative Record at 656.

was capable of performing a low stress job. Dr. Keating rated Jones-Bell's prognosis as "fair." Dr. Keating found that Jones-Bell could: (1) walk 1 block without rest or pain; (2) sit for 1 hour at a time before needing to get up; (3) stand for 5 minutes before needing to sit down or walk; (4) stand/walk for less than 2 hours in an eight-hour workday; (5) sit for about 2 hours in an eight-hour workday; (6) rarely lift more than 10 pounds and occasionally lift 10 pounds; and (7) rarely twist, stoop, crouch, and climb stairs. Dr. Keating also determined that Jones-Bell should avoid all exposure to: extreme cold, extreme heat, cigarette smoke, perfumes, solvents and cleaners, fumes, odors, and gases, dust, and chemicals. Lastly, Dr. Keating opined that Jones-Bell would likely miss more than four days of work per month due to her impairments or treatment for her impairments.

In a letter dated November 1, 2008, Dr. Keating provided DDS with information regarding Jones-Bell's alleged disability. Dr. Keating opined that:

> I do think [Jones-Bell's] work related abilities are significantly compromised because of impairment due to her . . . medical problems. She cannot carry weight of any kind. I don't think she could stoop, climb, knee[l] or crawl at all. She could stand, walk and sit for intermittent amounts of time. I wouldn't want her doing anything for more than 45 minutes in terms of walking or sitting and I don't think she could stand for more than 30 minutes at a time. . . . She should not be around any extremes of temperature or exposure to dust, fumes or hazardous materials or chemicals of any kind that could set off her asthma. . . .
>
> With regard to her mental ability, she is easily stressed and does become anxious. She fatigues quite easily and she does have I think a decreased attention span. She does work well with others and has good judgment . . . but I don't think she would have the ability to stay on task or focus for an eight hour day as she does get overwhelmed.

(Administrative Record at 687.)

## V. CONCLUSIONS OF LAW

### A. *ALJ's Disability Determination*

The ALJ determined that Jones-Bell is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined

effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Jones-Bell had not engaged in substantial gainful activity since March 8, 2008. At the second step, the ALJ concluded from the medical evidence that Jones-Bell had the following severe impairments: asthma, obesity, sleep apnea, diabetes mellitus, hypertension, lower back pain, and knee pain. At the third step, the ALJ found that Jones-Bell did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Jones-Bell's RFC as follows:

> [Jones-Bell] has the residual functional capacity to perform light work . . . except that she could lift twenty pounds occasionally and ten pounds frequently. She could only be on her feet two hours total during a workday. She could only occasionally balance, stoop, crouch, kneel, crawl, or climb. She could not tolerate any extremes of heat, cold, humidity, dust, or fumes. [She] has nut allergies. She would be limited to simple, routine, and repetitive work. She could have only occasional superficial contact with the public. She could work at no more than a regular pace.

(Administrative Record at 899.) Also at the fourth step, the ALJ determined that Jones-Bell was capable of performing her past relevant work as a cashier. Therefore, the ALJ concluded that Jones-Bell was not disabled.

### B. Objections Raised By Claimant

Jones-Bell argues that the ALJ erred in two respects. First, Jones-Bell argues that on remand, the ALJ failed to properly consider and evaluate the opinions of her treating

physician, Dr. Keating. Second, Jones-Bell argues that the ALJ failed to properly consider Jones-Bell's obesity as a contributing factor to her disability.

### 1. Dr. Keating's Opinions

Jones-Bell argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Keating. Specifically, Jones-Bell argues that the ALJ's reasons for discounting Dr. Keating's opinions are not supported by substantial evidence on the record. Jones-Bell concludes that this matter should be remanded again for proper consideration of Dr. Keating's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ thoroughly reviewed and summarized the various opinions provided by Dr. Keating.[10] The ALJ also thoroughly addressed Dr. Keating's opinions:

> The undersigned has afforded the opinions proffered by Dr. Keating little weight for the following reasons. The multiple opinions proffered by Dr. Keating contained internal inconsistencies, without providing any discussion or rationale as to why such discrepancies occurred. More specifically, Dr. Keating initially reported that the claimant could lift twenty pounds. However, in subsequent reports only a few months later, reported that the claimant could lift only ten pounds occasionally and then the following month reported that she "cannot carry weight of any kind." Furthermore, the doctor initially reported that the claimant could stand for no longer than five minutes. However, she subsequently reported that the claimant could stand for no more than thirty minutes at one time. Significantly, the doctor did not indicate how she came to these conclusions. Notably, the doctor's "opinions" varied significantly over a relatively short timeframe, without

---

[10] *See* Administrative Record at 911-912 (providing a thorough review of Dr. Keating's various opinions).

15

any supporting documentation supporting these variations. As noted above, such extreme limitations simply appeared inconsistent with the relatively normal physical examination findings of record.

Furthermore, these opinions appeared inconsistent with the objective medical findings of record. Treatment notes indicated minimal objective findings concerning the claimant's allegations of back pain and knee pain (Exhibits B3F; B40F). While records indicated some occasional asthma exacerbations, treatment notes indicated that these responded well to nebulizer and prednisone treatment. Notably, numerous physical evaluation findings alter these treatments indicated normal pulmonary findings on evaluation. Contrary to the opinions, the claimant was noted as traveling frequently, with visits to New Orleans and New York from January through April 2008. Of note, the doctor failed to discuss the claimant's noncompliance issues, with records indicating she failed to start prednisone treatments after reporting an exacerbation; however, was able to travel to New Orleans without any apparent difficulty (See Exhibits B3F; B4F; B5F; B7F). The claimant's pulmonologist noted normal and stable findings on evaluation in September 2008, similar to notations from Dr. Keating at this time indicating that the claimant's asthma was doing well (Exhibits B13F; B19F). In November 2008, the claimant reported feeling stable following treatment on prednisone for an exacerbation, with Dr. Keating noting normal findings on physical evaluation and the claimant reporting she was doing well. Of note, this appeared contrary to the doctor's opinion that the claimant's symptoms lasted for several weeks following an acute exacerbation (Exhibit B19F). Notably, records indicated the claimant had no absenteeism from college courses, which appeared inconsistent with the doctor's opinions regarding the claimant's asthma symptoms (Exhibit B29F).

Significantly, directly contrary to the opinions proffered by Dr. Keating, subsequent medical records indicated the claimant's symptoms were well controlled after starting Xolair treatments (Exhibit B29F; B35F). Significantly, in April

> 2010, the claimant reported only mild and sporadic asthma symptoms, with records indicating ongoing noncompliance, as discussed in the medical evidence above. Moreover, repeated spirometry testing showed improvement in the claimant's pulmonary functioning, with only mild obstructive findings (Exhibits B27F; B36F). Contrary to findings that the claimant would miss work several times per month, treatment notes with Dr. Collett indicated that despite asthma symptoms the claimant was taking college courses without having any absences due to pulmonary issues (Exhibit B29F). Based on these and numerous other inconsistencies as noted throughout discussion of the medical findings of record, the opinions of Dr. Keating are provided little weight.

(Administrative Record at 912-913.)

Having reviewed the entire record, the Court finds that on remand, the ALJ properly considered and thoroughly addressed the opinion evidence provided by Dr. Keating. Furthermore, the Court finds the ALJ provided "good reasons" for rejecting the opinions of Dr. Keating. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. Consideration of Obesity

Jones-Bell argues that the ALJ failed to properly evaluate her obesity. Specifically, Jones-Bell argues that the ALJ failed to fully and fairly develop the record with regard to the effects of her obesity on her other limitations and her RFC assessment. Jones-Bell maintains that this matter should be remanded to further development of the record.

In considering this issue, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at

1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In particular, with regard to the issue of obesity, Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

On remand, the ALJ thoroughly considered and evaluated Jones-Bell's obesity in making his disability determination. The ALJ addressed Jones-Bell's obesity impairment as follows:

> [O]besity is documented in the record. Review of the longitudinal treatment record indicated the claimant had a long history of obesity, with BMI readings ranging from 47 to 56 (Exhibit B4F; B6F; B7F; B19F; B26F; B37F; B40F). However, despite her morbid obesity, the claimant was able to travel without any significant difficulties, with records indicating she traveled to New York and Louisiana. In addition, she was taking college courses successfully, without any absenteeism (Exhibits B7F; B29F). The claimant underwent evaluation for possible bariatric surgery. Treatment notes from the University of Iowa indicated the claimant was found to be appropriate for the surgery, with normal subsequent workup regarding her surgical status. Contrary to the claimant's allegations and testimony, during an evaluation in August 2010 she admitted being able to do normal activities

> such as shopping and housework without any substantial limitations (Exhibit B44F). The claimant testified that she did not follow through with bariatric surgery due to her subjective fears (Hearing Testimony). The claimant's physician reported that her other medical conditions, including diabetes, hypertension, asthma and sleep apnea were directly affected by her obesity (See Exhibits B7F; 29F). However, it was notable that the claimant was noted as noncompliant with dietary and exercise recommendation, tending to indicate her obesity was not as limiting as generally alleged (See Exhibits B23F; B37F). The undersigned has given consideration to Social Security Ruling 02-1p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment identified. The claimant's obesity has been considered in combination with the claimant's other established impairments and all limitations thereof have been incorporated into the residual functional capacity detailed above.

(Administrative Record at 908-909.)

Here, the ALJ explicitly stated that he considered Jones-Bell's obesity in making her disability determination. Moreover, the ALJ considered and addressed the effects of Jones-Bell's obesity on her other limitations and her RFC assessment. Thus, the Court believes that the ALJ properly considered Jones-Bell's obesity in making his RFC and disability determinations in accordance with SSR 02-1p. Therefore, having reviewed the entire record, the Court finds that on remand, the ALJ fully and fairly developed the record with regard to the issue of Jones-Bell's obesity. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ

because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that on remand, the ALJ properly considered and thoroughly addressed the opinions of Dr. Keating, Jones-Bell's treating physician. The Court also finds that on remand, the ALJ fully and fairly developed the record with regard to Jones-Bell's obesity in making his RFC and disability determinations in accordance with SSR 02-1p. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 1st day of December, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA